IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| BARBARA KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 09-5102-CV-SW-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. 405(g), and application for supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they

are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff, who was 49 years old at the time of the hearing before the ALJ, has a high school education and some college. She has past relevant work as a nurse assistant, collection agent, and telephone solicitor. She alleges that she is disabled because of mental problems, including social anxiety disorder/avoidant personality disorder.

At the hearing before the ALJ, plaintiff testified that she was fired from her last job in collections because she had trouble doing her job correctly, she was highly stressed, and she had a difficult supervisor. She has not found another job because she cries and gets nervous during interviews. She had also worked in customer service and office support over the years, but she could not do that now because it is very difficult for her to work with people. When she lost her last job, she "had a nervous breakdown." [Tr. 24]. She is easily agitated, frustrated and has little patience. Her hands shake, she has difficulty thinking straight, and trouble remembering. She has had trouble at her last few jobs grasping job responsibilities, is slower than other workers, and has problems with concentration and focus. She lost her last two jobs because she was not able to perform her job duties. Plaintiff testified that she has trouble getting along with supervisors and co-workers. She takes prescribed medication, which usually helps. Her only side effect is with a medication for osteoporosis. If she could get her emotional problems under her control, she thought there was a slight possibility that she would be able to work. She testified that she has a long history of abuse, and a lot of suppressed memories have come to the surface in the past 5 to 10 years. She lives in government housing, which is funded by the

3

Missouri Department of Mental Health. Plaintiff acknowledged that she had a problem cutting herself in the past, but that she does not now have thoughts of self-harm. She has several support groups of people from church and a caseworker, whom she can call when she is having an excessive amount of difficulty controlling her emotions. This does not happen as much as it used to. Plaintiff also described physical problems with arthritis and pain, stating that she is limited in how long she can stand and sit, and that she has to lie down because of pain at least twice a day. She gets almost daily severe headaches.

A medical expert, who is a clinical psychologist, reviewed plaintiff's medical records during the hearing. He found her symptoms to be moderate throughout the records he reviewed, and found that she would be capable of simple, repetitive tasks, non-public.

The ALJ found that plaintiff has not engaged in substantial work activity since the alleged onset date of disability, April 11, 2005. He found that the medical evidence established that plaintiff suffers from a generalized anxiety disorder and a depressive disorder, but that she did not have an impairment or combination of impairments that met or equaled a listed impairment. The ALJ found that plaintiff was not credible. He found that plaintiff had the residual functional capacity ["RFC"] to perform a full range of light work, and she can perform simple repetitive tasks, non-public, with minimal interaction with co-workers and supervisors. It was his decision that she was unable to perform her past relevant work as a nurse assistant, collection agent, or telephone solicitor. According to the testimony of a vocational expert, there was work that she could perform, considering the limitations set forth by the ALJ. These include bench assembler, bottling line attendant, and scrap separator. Therefore, it was the ALJ's finding that plaintiff is not under a disability as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because he erred in the weight he gave to three treating sources; erred in his RFC finding; and erred in his credibility analysis.

While a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations. The Court has, however, upheld an ALJ's decision to discount or even disregard the opinion of a treating physician where other medical assessments "are supported by better or more thorough medical evidence,"Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997), or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996). When the record contains no evidence to support the ALJ's residual functional capacity finding other than an assessment by a non-treating physician, that assessment alone cannot be considered substantial evidence in the face of the conflicting assessment of a treating physician. Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1991).

The record contains medical opinions and medical source statements of three treating providers, John Grause, Ph.D., the treating psychologist; July Ballard, R.N., the treating nurse

practitioner; and Ronald Browning, M.D., a treating physician, none of which were given controlling weight by the ALJ. Dr. Grause treated her over a three-year period, 2005-2008, diagnosing her with major depressive disorder and avoidant personality disorder. He filled out a Medical Source Statement-Mental ["MSSM], in which he opined that she could not work because of her disabilities. He found, among other limitations, that she was extremely limited in her ability to perform functions within a schedule, maintain regular attendance, be punctual, complete a normal workday without interruption from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Grause relied on psychological testing, which indicated extreme to marked limitations, and found her to withdrawn and isolated, with limited social skills. In October of 2008, he found that her mental status had declined, and diagnosed her with avoidant personality disorder at that time. He indicated that she could not work because she could not interact with others due to her psychiatric conditions.

The ALJ found his assessment to be inconsistent with the record. He indicated that the opinion of Dr. Grause was not consistent with reports prepared by a community support worker, which indicates that plaintiff meets with a church group weekly, and moved into her own apartment. Plaintiff submits that Dr. Grause's opinion is not inconsistent with these activities because he did not state that plaintiff could not be with friends, but rather, that she could not make new friends. Similarly, plaintiff argues that Dr. Grause's opinion indicates that she is comfortable around groups she has known for years, but because of her declining mental status, she cannot join new groups or deal with first time, non-scheduled interactions.

Regarding the opinion of the nurse practitioner, the ALJ discredited her frequent assessments because he found them not to be supported by her treatment notes. Plaintiff submits that Nurse Ballard indicated in her records that plaintiff had extreme limitations in the ability to function in the public, and specifically with in-person interactions and coping strategies. The MSSM she prepared noted marked limitations in the ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; work in coordination with others without distracting them; accept instructions and accept criticism from a supervisor; respond appropriately to changes in the work setting; and maintain regular attendance and punctuality. Plaintiff also highlights the fact that a 6-hour assessment was performed in October of 2007, which showed a Global Assessment Functioning ["GAF"] score of 50.

In terms of the treating physician, Dr. Browning opined that plaintiff had marked limitations in the ability to complete a normal workday or workweek due to psychologically-based symptoms; to interact appropriately with the general public; to work at a consistent pace without unreasonable breaks; and to travel in unfamiliar places or use public transportation. He completed both an MSSM and an assessment of her physical limitations. The ALJ rejected the doctor's opinion because he found the doctor to only have expertise on physical issues and not psychological ones. Plaintiff contends that this was error because the doctor had a longitudinal relationship with plaintiff over a number of years, and would have expertise in the physical and mental aspects of her health.

After a full review of the record and the ALJ's decision, the Court finds that there is not substantial evidence in the record as a whole to support the ALJ's decision that plaintiff's

impairments were not disabling. The record indicates that plaintiff has had a history of mental disorders, including depression and anxiety. She had some history of cutting herself, but reports that this is somewhat resolved and she does not now have suicidal ideation. She has never married nor had children. She does participate in church activities. While she has worked at a number of jobs, she has left many of those jobs because of problems getting along with co-workers or supervisors, or because of not being able to handle the work. She has been diagnosed with dysthymic disorder, major depressive disorder, social phobia, anxiety, stress headaches, and avoidant personality disorder. Plaintiff has been treated with psychotherapy and medication by the treating physician and treating psychologist. The overall record indicates that while she reports some improvement at times, she continues to suffer from severe mental issues. She has been approved for medical assistance benefits by the state at least twice because of severe mental impairments, rendering her unable to work. She has also been diagnosed with high blood pressure, osteoarthritis, hyperlipidemia, and cataracts. She has been prescribed Trazodone, Effexor, and Lorazepam for mental problems, and Dyaside, Vasotec, Lipitor and Lipid for her physical conditions.

    The ALJ rejected the opinion of the treating psychologist, whose degree of limitations indicated, according to the vocational expert, that plaintiff would be unable to perform her past work. He also rejected the opinion of the treating physician, finding him not to have expertise regarding plaintiff's mental problems. Given the fact that the doctor had a long-standing relationship with plaintiff, which included not only observing her regularly, but also prescribing medication for her mental condition, it would appear that the doctor is in a position to correctly assess plaintiff's mental and physical condition. Additionally, while the nurse practitioner is not

regarded as an acceptable medical source under the Act, it is clear that she saw plaintiff over an extended period of time, and found her to be markedly limited in several areas, just as her doctor and psychologist had. All of them found marked limitations in various aspects of her being able to work. Rather than relying on these consistent opinions regarding plaintiff's impairments, which included her to be markedly limited in her ability to maintain a regular workday or workweek because of psychologically based symptoms, the ALJ relied instead on the opinion of a medical expert who merely conducted a record review, and a community support worker.

The Court has carefully reviewed the records and finds that the ALJ erred in discounting the opinions of the treating sources. The degree of limitations suggested by the treating sources were assessed after her medical doctor and a psychologist had treated plaintiff for several years. It is clear that plaintiff suffers from severe anxiety in social settings, and that more than one treating source has found that she is markedly limited in her ability to interact appropriately and function within the parameters of the workplace.

Under the Social Security regulations, the opinion of a treating physician is accorded special deference, and the ALJ may only discount or disregard that opinion where there is better or more thorough medical evidence, or where a treating physician's opinion is so inconsistent that it undermines the credibility of such opinions. After reviewing the record as a whole, it cannot be said that there is substantial evidence in the record as a whole to reject the opinion of the treating sources. While plaintiff may have the ability to function in a familiar setting outside of her home by participating in activities with her church, the record supports a finding that, according to treating sources, she suffers from a severe mental impairment. The fact that she has some ability to function in a friendly setting does not necessarily indicate that she is able to

function in the workplace, particularly considering that several treating sources indicate that her debilitating mental impairments would preclude her from doing so. The Court finds that the ALJ erred in finding that the treating sources' opinions were inconsistent with the record as a whole, and erred in relying on the opinion of a record review by a consulting psychologist and the observations of a community support worker.

After a full review of the record and the ALJ's decision, the Court finds that there is not substantial evidence in the record as a whole to support the ALJ's decision that plaintiff's mental impairments were not disabling. Accordingly, the Court finds that the decision should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. § 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date:   3/14/11